**WESTWAY TRADING CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4826; Court No. 78-3-00402.**

United States Customs Court.

Nov. 1, 1979.

Murray Sklaroff, New York City, for plaintiff.

Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City (Saul Davis, New York City, on the briefs), for defendant.

BOE, Judge:

The plaintiff has filed a motion for summary judgment contesting the imposition of duty imposed pursuant to item 155.20, TSUS, as modified by Presidential Proclamation 4463, upon merchandise consisting of approximately 7,000 long tons of raw sugar exported from Peru and entered at the port of Baltimore, Maryland, on November 2, 1976. A protest to the assessment was filed by the plaintiff which was denied by the Customs Service.

The defendant has filed a cross-motion for summary judgment contending that the duty assessed by the District Director of Customs is correct and that, accordingly, the motion of the plaintiff herein should be denied and the above-entitled action dismissed.

In connection with the respective motions the following material facts have been submitted as undisputed.

On or about September 11, 1976, the plaintiff by contract with the Falmouth Shipping Company Ltd. chartered the vessel M/V Falmouth for the purpose of transporting sugar from Peru to the United States, the loading ports being designated as (1) Salaverry and (2) Eten and/or Pimentel.[1] Pursuant to this charter agreement the sugar was laden on the vessel at the port of Salaverry, Peru, on September 16–17, 1976, which vessel departed Salaverry on September 18, 1976 and proceeded to the port of Pimentel, Peru, at which latter port additional sugar was laden. The vessel departed the port of Pimentel, Peru, for the United States on October 5, 1976.

On September 21, 1976, Presidential Proclamation 4463 (41 F.R. 41681) was issued modifying prior proclamations and thereby increasing the duty on sugar imported into the United States under item 155.20, TSUS.

_____

1. Exhibit 6. Plaintiff's Motion for Summary Judgment.

Presidential Proclamation 4463 was modified by Presidential Proclamation 4466 (41 F.R. 44031) under date of October 4, 1976 providing in part that the provisions of Presidential Proclamation 4463 " * * * shall not be effective with respect to articles exported to the United States before 12:01 A.M. (U.S. Eastern Daylight Savings Time), September 21, 1976, provided that such articles are entered or withdrawn from warehouse, for consumption on or before November 8, 1976."

The sole issue presented to this court is whether the merchandise in question which was laden on the vessel which departed Salaverry, Peru, on September 18, 1976 was "exported to the United States before 12:01 A.M. * * * September 21, 1976" within the intendment of Presidential Proclamation 4466. In support of its contention that the sugar cargo laden at the port of Salaverry, Peru, is exempt from any increased duty, the plaintiff urges that a similar construction should be given to the date of exportation contained in Presidential Proclamation 4466 as given to the same phraseology contained in Additional Duty Order No. 3 (36 F.R. 17667) (1971) issued by the Secretary of the Treasury establishing certain specific exemptions from the surcharge initially imposed by Presidential Proclamation 4074 (36 F.R. 15724) (1971).[2] Pursuant to the authority granted to him in Presidential Proclamation 4074, the Secretary of the Treasury in Additional Duty Order No. 3 provided that articles "exported" to the United States before 12:01 a. m., August 16, 1971, were exempt from the surtax. In addition, the Secretary therein authorized the Commission of Customs to prescribe such regulations and issue such instructions necessary to carry out the purposes of that Order. In determining the date of exportation under the provisions of Additional Duty Order No. 3, the Commissioner of Customs thereupon under date of September 3, 1971, directed a telegram to all Regional Commissioners and District Directors of Customs setting forth the regulations and guidelines to be followed in making such a determination, specifically providing in pertinent part: "Where goods are exported from the country of exportation by vessel, and where the vessel lades merchandise at 2 or more ports within that country, the date of exportation for each of the shipments shall be the date upon which the shipment left the port at which it was laden. · * * * "[3]

It is upon the foregoing regulation and instruction that the plaintiff predicates its claim that the departure of the charter vessel from the port of Salaverry, Peru, as distinguished from its subsequent departure from the port of Pimentel, Peru, constitutes the "date of exportation" to the United States as allegedly intended by Presidential Proclamation 4466.

Although Presidential Proclamation 4074 and Additional Duty Order No. 3 gave rise to the litigation comprising *United States v. Hugo Stinnes Steel & Metals Co.*, 599 F.2d 1037, 66 CCPA __, C.A.D. 1226, 1979, the facts involved therein cause it to be of little value in the determination of the issue involved in the case at bar. In *Hugo Stinnes* no dispute existed as to the date the merchandise in question was shipped from its country of origin, Japan. The issues therein rather related to the question of the destination of the merchandise at the time of its exportation as well as to the question of a possibility of a diversion of the merchandise after exportation to a destination other than the United States. No authority has been brought to the attention of this court supporting plaintiff's hypothesis with respect to its contended construction of the language contained in Presidential Proclamation 4466.

2. The Proclamation directed that subpart C be inserted immediately after subpart B of part 2 of the Appendix to the Tariff Schedules of the United States. By the terms of headnote 4(a) of subpart C express authority was delegated to the Secretary of the Treasury to "* * * take action to reduce, eliminate or reimpose the rate of additional duty herein or to establish exemption therefrom * * *."

3. Exhibit 4. Plaintiff's Motion for Summary Judgment.

It is true that the language contained in the latter proclamation "* * * articles exported to the United States before 12:01 A.M. * * * September 21, 1976 * * " is similar to the language contained in Additional Duty Order No. 3 issued by the Secretary of the Treasury in delineating the exemptions from the surtax assessed in Presidential Proclamation 4074. However, this court is not persuaded that a single repetition in Presidential Proclamation 4466 of the phraseology contained in Additional Duty Order No. 3 contemplates the same construction expressed in the instructions and regulations, heretofore referred to, issued by the Commissioner of Customs on September 3, 1971. Contrary to the assertion of the plaintiff, the case of *United States v. Curley-Bates Co.*, 46 CCPA 14, C.A.D. 688 (1958), cannot be deemed supportive of the interpretation urged by the plaintiff nor in any way applicable in the instant proceedings. In the foregoing decision the term in controversy had been judicially interpreted and thereafter included in three successive tariff acts without any indication of a change in meaning. By virtue of such continued and repeated usage, our appellate court held that congressional approval of the initial judicial interpretation was indicated. The plaintiff acknowledges that the language in question in the instant action appears to have been used only on the two occasions specifically referred to. Neither judicial interpretation nor long standing nor repeated usage can be said to imprint upon the phraseology contained in Presidential Proclamation 4466 the construction once given by the Commissioner of Customs in the regulations issued by him relating to Additional Duty Order No. 3. A repetition of language occurring for the first time in Presidential Proclamation 4466, in the absence of further explanatory guidance, cannot in itself give rise to the alleged presumption that the President intended such language to be interpreted in the same manner as the regulations and instructions once previously issued by the representative of a former executive on a prior occasion and under different circumstances.

On its face, the directive containing the regulations and instructions issued by the Commissioner of Customs relating to Additional Duty Order No. 3, and upon which plaintiff predicates its claimed interpretation, appears to indicate its applicability to Additional Duty Order No. 3 only. In fact, a similar construction never previously nor subsequently has been applied by the Commissioner of Customs in determining the date of exportation of merchandise under facts existing similar to those in the instant action. Of particular interest is the interpretation given by the Commissioner of Customs to the subsequent Additional Duty Order further implementing Presidential Proclamation 4074 and issued by the Secretary of the Treasury after the issuance of Additional Duty Order No. 3. The record herein indicates that on December 18, 1971, the Secretary of the Treasury promulgated Additional Duty Order No. 4 (37 F.R. 887) which further excluded from the 10% surcharge provided by Presidential Proclamation 4074 certain textile articles. In again providing regulations and guidelines relating to a determination of the date of exportation of such textile articles, the Commissioner of Customs under date of January 26, 1972, directed [4] that the date of exportation thereof was to be determined in accordance with section 14.3(b), Customs Regulations,[5] and specifically prohibited the determination of the date of exportation in the man-

---

4. Exhibit B. Defendant's Cross-Motion for Summary Judgment.

5. 19 C.F.R. § 14.3(b) (1972 ed.)—

(b) The time of exportation referred to in section 402 and section 402a of the tariff act, as amended, is the date on which the merchandise actually leaves the country of exportation for the United States.[5]

5. If the merchandise is shipped directly by water from the country of export, the date of the sailing of the vessel is the date of exportation. Since the act of exportation is not complete until the merchandise finally leaves the jurisdiction of the exporting country, if a vessel with merchandise on board sails from two or more ports, or more than *once from the same port*, of the exporting country, whether or not stopping on the intervening voyage at a port of another jurisdiction, or if the merchandise is transshipped in another jurisdiction and subsequently reenters the jurisdiction of the exporting coun-

ner specified in his prior directive to Additional Duty Order No. 3 under date of September 3, 1971.

It would appear manifestly clear, therefore, that except for the specific instructions issued by the Commissioner of Customs relating to the interpretation of the term "exported" with respect to Additional Duty Order No. 3, all other regulations and instructions uniformly have defined and interpreted the date of exportation to mean the date on which the particular merchandise in question actually leaves the country of exportation. The geographical designation, i. e.—"country"—is specifically used as distinguished from a port or ports therein. Thus, section 152.1(c) (19 C.F.R. 1976 ed.) of the Customs Regulations again defines the meaning of the date of exportation:

> (c) *Date of exportation.* "Date of exportation," or the "time of exportation" referred to in section [sections] 402 and 402a, Tariff Act of 1930, as amended (19 U.S.C. [§§] 1401a and 1402), means the actual date the merchandise finally leaves the country of exportation for the United States. * * *

Prior judicial decisions likewise have uniformally construed the date of exportation to be that time the merchandise finally departs the country of exportation notwithstanding the number of ports therein from or through which the merchandise may have been transported and/or laded. The decision in the case of *Forman v. Peaslee*, 9 Fed.Cas. 452, 21 Law Rep. 273 (1857) has been followed consistently by our court and the appellate court in the determination of the date merchandise is deemed to be "exported" to the United States. *See also Avakin Bros., Inc. v. United States*, 41 CCPA 80, C.A.D. 532 (1953); *D.N. & E. Walter & Co. v. United States*, 42 CCPA 114, C.A.D. 582 (1955) and *United States v. Abell Forwarding Co., Inc. (Canada Atlantic Grain Export Co., Inc.)*, 73 Treas.Dec. 1426, R.D. 4248 (1938).

It is true that the customs regulations afore-quoted as well as the court decisions determining the date of exportation of merchandise have related to the ultimate determination of the value of such merchandise under sections 402 and 402a of the Tariff Act of 1930, as amended. The reasoning of the courts therein, however, is equally applicable to and determinative of the date of exportation contained in Presidential Proclamation 4466 in the absence of accompanying language specifically indicating a construction otherwise.

In view of the foregoing, it is the opinion of the court that it cannot be presumed that the President in promulgating Proclamation No. 4466 intended the language thereof to be interpreted in conformity with the new-begotten and unrepeated construction of the date of exportation contained in the regulations and instructions of the Commissioner of Customs under date of September 3, 1971, to Additional Duty Order No. 3. The plaintiff, therefore, having failed to rebut the presumption of correctness attaching to the determination of the District Director of Customs in the assessment of duty in connection with the merchandise in question in the instant action, the motion of the plaintiff for summary judgment is hereby denied, and the cross-motion of the defendant for summary judgment is granted.

Let judgment be entered accordingly.

---

try on another vessel, or if the merchandise is transsshipped to another vessel in the same jurisdiction, the date the vessel on which the

merchandise finally leaves the exporting country sails from the last port thereof is the date of exportation. * * *