**MITSUI FOODS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 86–4–00521.**

United States Court of
International Trade.

March 30, 1988.

Harris & Berg, Herbert E. Harris and Cheryl Ellsworth, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Kenneth N. Wolf, New York City, for defendant.

## MEMORANDUM OPINION
## AND ORDER

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan, described on the customs invoices as canned tuna, not packed in oil, not over 15 pounds per can.

In 1984 the imported merchandise was classified by the Customs Service under item 112.34, Tariff Schedules of the United States (TSUS) as "[t]una ... [o]ther." Consequently, the merchandise was assessed with duty at the rate of 12.5 per centum *ad valorem.*

Plaintiff protests this classification and contends that the imported merchandise is properly classifiable under item 112.30, TSUS, as "[t]una: [i]n containers weighing with their contents not over 15 pounds each, and not the product of any insular possession of the United States, for an aggregate quantity entered in any calendar year not to exceed 20% of the United States pack of canned tuna during the immediately preceding calendar year, as reported by the National Marine Fisheries Service." If the imported merchandise is properly classifiable under item 112.30, TSUS, as main-

tained by plaintiff, then the merchandise would be entitled to a duty rate of 6 per centum *ad valorem.*

The pertinent statutory provisions of the tariff schedules are as follows:

*Classified by Customs under:*

Schedule 1, Part 3, Subpart C:

Fish, prepared or preserved in any manner, not in oil, in airtight containers:

...

Tuna:

...

112.34    Other .................... 12.5% <u>ad</u> <u>val.</u>

*Claimed by plaintiff under:*

Schedule 1, Part 3, Subpart C:

Fish, prepared or preserved in any manner, not in oil, in airtight containers:

...

Tuna:

112.30    In containers weighing with their contents not over 15 pounds each, and not the product of any insular possession of the United States, for an aggregate quantity entered in any calendar year not to exceed 20% of the United States pack of canned tuna during the immediately preceding calendar year, as reported by the National Marine Fisheries Service ........ 6% <u>ad</u> <u>val.</u>

The question presented, therefore, is whether the imported merchandise has been properly classified by Customs as canned tuna under item 112.34, TSUS, or whether it is properly classifiable as "[t]una: [i]n containers weighing with their contents not over 15 pounds each, and not the product of any insular possession of the United States, for an aggregate quantity entered in any calendar year not to exceed 20% of the United States pack of canned tuna during the immediately preceding calendar year, as reported by the National Marine Fisheries Service," under item 112.-30, TSUS, as contended by plaintiff. In order to decide this issue, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed.Cir.1984).

Contending that there is no triable issue of fact, both parties moved for summary judgment pursuant to Rule 56 of the Rules of the Court. Upon examining the tariff schedules, relevant case law, and supporting papers, the court concludes that there are no material issues of fact in dispute, and that the imported merchandise has been properly classified. Hence, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

On a motion for summary judgment it is the function of the court to determine whether there are any factual disputes that are material to the resolution of the action. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296–97 (11th Cir.1983). The court may not resolve or try factual issues on a motion for summary judgment. *Yamaha Int'l Corp. v. United States,* 3 CIT 108, 109 (1982) [available on WESTLAW, 1982 WL 2221]. Moreover, the burden is upon the party moving for summary judgment to show that there are no material facts in dispute. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Imported tuna, prepared or preserved in any manner, not in oil, in containers weighing with their contents not over 15 pounds each, is subject to a tariff-rate quota. The quota amount equals 20 percent of the preceding year's "United States pack," as reported by the National Marine Fisheries Service (NMFS). Merchandise imported within the quota level is classified under item 112.30, TSUS, and subject to a duty at a rate of 6 per centum *ad valorem;* imports in excess of that amount are classified in item 112.34, TSUS, and are subject to the higher duty rate of 12 per centum *ad valorem.* Plaintiff's merchandise was classified under item 112.34 because the quota level had been filled.

It is undisputed that the imported merchandise is canned tuna, not in oil, in containers, and not over 15 pounds each. The plaintiff, however, claims that the phrase "United States pack of canned tuna ... as reported by the [NMFS]," as stated in item 112.30, TSUS, includes tuna packed in American Samoa. Furthermore, plaintiff contends that the figures reported by the NMFS in 1983 were erroneous, and should

have included the American Samoa production thereby making the quota levels higher. Hence, the question presented is whether the phrase "United States pack of canned tuna ... as reported by the [NMFS]," as it is used in item 112.30, TSUS, includes tuna packed in American Samoa.

In support of its motion, plaintiff contends that the common meaning of the term "United States pack of canned tuna ... as reported by the [NMFS]," as established in reporting by the United States government and by use within the industry, includes American Samoa production. Plaintiff maintains that since 1954 all agency publications of the NMFS which report the United States pack of canned tuna include production in American Samoa, except those reports used by the Customs Service in determining the quota. In addition, plaintiff contends that when the quota was established in 1955, pursuant to a reservation contained in the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade (protocol) and included in Presidential Proclamation 3105, "the parties to the agreement premised their discussions on the term 'United States pack' as it was commonly understood at that time." According to plaintiff, American Samoan production of canned tuna was included in United States government statistics at that time, as evidenced by data published by the United States Fish and Wildlife Service.

In opposition to plaintiff's motion, defendant maintains that since the implementation of the tariff-rate quota, the United States Fish and Wildlife Service and its successor agency, the NMFS, has interpreted the statutory words "United States pack" as excluding American Samoan pack, for purposes of reporting the figures to the Customs Service. According to defendant, the purpose of the statute was to protect the United States industry by increasing the duty on imported canned tuna which exceeded the tariff-rate quota. Hence, defendant asserts that the decision of the NMFS in administering the statute, to exclude the American Samoan production, is to be followed unless it is unreasonable.

Furthermore, defendant contends that "legislative action subsequent to the protocol supports the government's interpretation and demonstrates Congress' acquiescence in the government's interpretation."

It is evident from the submissions that there is no material issue of fact in dispute, but rather, an issue of law. Namely, the parties are in disagreement as to whether the exclusion of American Samoan canned tuna production from the calculation of "United States pack" was lawful and proper. More specifically, the parties disagree as to whether the exclusion was within the legislative intent of the tariff-rate quota, and whether the interpretation of the statute by the NMFS was a reasonable one.

The parties agree that the NMFS underreported the figures for "United States pack," in 1983, and both parties also agree that the NMFS subsequently realized the miscalculation and adjusted the figures to reflect the correction. The plaintiff contends, however, that the figures are still erroneous, and that American Samoan production must properly be included as part of "United States pack." Clearly, therefore, the dispute between the parties pertains to whether the statutory tariff-rate quota was based on figures properly reported by the NMFS, and whether the quota was intended to include American Samoan production as part of "United States pack." This question of statutory interpretation is properly before the court.

The tariff acts, as other statutes, are to be interpreted so as to carry out the underlying legislative intent. *See Sandoz Chemical Works, Inc. v. United States,* 43 CCPA 152, 156, C.A.D. 623 (1956). It is axiomatic that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). If a statute is silent or ambiguous with respect to a particular issue, it is appropriate for the court to accord deference to the agency's interpretation of the statute, if it is reasonable and consistent with the congressional will. *See Japan*

*Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 106 S.Ct. 2860, 2868, 92 L.Ed.2d 166 (1986); *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

The tariff-rate quota found in item 112.-30, TSUS, was implemented pursuant to the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade and Presidential Proclamation 3105 (July 22, 1955) as supplemented by Presidential Proclamation 3128 (March 16, 1956). The Proclamation was issued under the authority of section 350 of the Tariff Act of 1930. Pursuant to Presidential Proclamation 3128, and item 112.30, TSUS, the agency responsible for the administration of the quota is the National Marine Fisheries Service (formerly the Fish and Wildlife Service). It is important to note, therefore, that it is the NMFS that is authorized to report the amount of "United States pack" tuna to the Customs Service. Customs then calculates the quota amount from the reported figures.

■ The language of tariff item 112.30 indicates clearly that its purpose as a tariff-rate quota is to impose limits on the quantity of foreign tuna that may enter the United States under the lower tariff rate, thereby affording protection to the United States industry. Pursuant to item 112.30, only foreign imports which do not exceed 20% of the United States pack as reported by the NMFS, may enter the United States at the lower concession rate of 6 per centum *ad valorem*. As defendant points out, if the figure for "United States pack" as reported by the NMFS is increased by the inclusion of American Samoan pack, more imported tuna would be dutiable at the lower rate. It is submitted that this would clearly be contrary to the purpose of the statute intended to provide a protective measure to domestic tuna producers.

The term "United States pack" is not defined in the tariff schedules. Plaintiff asserts, however, that the term includes American Samoan pack because it is included in United States production figures reported for other purposes. Since the cited figures are reported for purposes other than the administration of the customs laws, this argument is not persuasive.

■ The defendant notes that "United States" is defined in Section 401(k) of the Tariff Act of 1930 (current version at 19 U.S.C. § 1401(h) (1982)), as excluding American Samoa. Section 401(k) expressly provides that "[t]he term 'United States' includes all Territories and possessions of the United States, except the Philippine Islands, the Virgin Islands, American Samoa, and the island of Guam." The defendant contends that, as evident from agency policy as reflected by agency documents, the Fish and Wildlife Service relied on this definition in determining "United States pack." Furthermore, defendant contends that since the NMFS is administrator of the statute, due weight must be accorded by the court to its interpretation of "United States pack." *See, e.g., United States v. City of Fulton*, 475 U.S. 657, 106 S.Ct. 1422, 1428, 89 L.Ed.2d 661 (1986).

It is not questioned that the court will defer to the agency's interpretation of the statute, if the interpretation is consistent with the intent of the legislature, or with the guiding purpose of the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Judicial precedents teach that an agency's interpretation of a statute need not be the only reasonable one, or even the one the court would have adopted if the question had initially arisen in a judicial proceeding. *See id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Indeed, for the interpretation of the administering agency to be accepted, it need only be shown that it is " 'sufficiently reasonable.' " *See Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981).

In excluding American Samoan pack from its calculation of "United States pack," the NMFS was interpreting the provision "United States pack" in a manner consistent with the protective purpose of the tariff-rate quota. Surely, this cannot be said to be an unreasonable interpreta-

tion of the tariff-rate quota. Furthermore, there is a statutory presumption of correctness that attaches to the classification of the Customs Service. *See* 28 U.S.C. § 2639(a)(1) (1982); *see also Westway Trading Corp. v. United States,* 68 CCPA 1, 4, 633 F.2d 1388, 1390 (1980).

It is also pertinent that in 1981 Congress was aware of the longstanding practice of excluding American Samoan pack from the calculation of "United States pack," and acquiesced to this administrative interpretation. In 1983, Congress enacted Public Law 97–446 which amended item 112.30, TSUS, by adding the phrase "and not the product of any insular possession of the United States," to indicate that shipments from the United States insular possessions are not to be included in determining the extent to which the quota has been filled.

The Report to the House of Representatives on the proposed amendment to item 112.30, TSUS, specifically demonstrates congressional awareness that, "[t]he quota is established as 20 percent of the U.S. pack (*excluding American Samoa*) of canned tuna...." H.R.Rep. No. 97–257, 97th Cong., 1st Sess. 4 (1981) (emphasis added). The report stated that the reason for the amendment to item 112.30 was that in 1980 the Customs Service changed its method of classifying shipments of American Samoan tuna by including these shipments as imports in determining whether the quota was filled. According to the report, "[i]n the past, virtually all imports of tuna not packed in oil had entered at the lower, within-quota rate." *Id.* In 1980, however, Customs "began assessing the over-quota duty rate on imported canned tuna as a result of the tariff quota being filled." *Id.* Thus, Congress clarified the tariff schedule to assure that a shipment from a United States insular possession, including American Samoa, was "not ... considered as an import shipment source." *Id.* It cannot be doubted, therefore, that Congress was expressly aware that the NMFS excluded American Samoan pack from "United States pack" for purposes of calculating the quota.

It is well established that a longstanding administrative practice will not be disturbed in the absence of compelling reasons to the contrary. *See United States v. Electrolux Corp.,* 46 CCPA 143, 146, C.A.D. 718 (1959). Furthermore, as Congress was aware of the practice of the NMFS, and no changes were made in the text of the statute when it was amended in 1983, under the circumstances presented, Congress must be deemed to have approved and ratified the prior administrative interpretation. *See, e.g., United States v. Schmidt Pritchard & Co.,* 47 CCPA 152, 157–58, C.A.D. 750 (1960).

The legislative history of the tariff-rate quota shows that its purpose was to impose limits on the quantity of foreign tuna that may enter the United States under the lower concession rate. Consequently, it cannot be said that it is contrary to the legislative intent for the NMFS to interpret "United States pack" as excluding tuna canned in American Samoa. Plaintiff's proposed interpretation of the statute would not promote the fundamental goal of the quota, and would permit increased importation of foreign canned tuna under the lower duty rate, to the detriment of domestic producers. In sum, the court is not persuaded that the words "United States pack" include American Samoan pack, and holds that the administrative interpretation to exclude American Samoan pack from "United States pack" is reasonable and will not be disturbed.

In view of the foregoing, the court holds that the Customs Service properly classified the imported canned tuna as "[t]una ... [o]ther," under item 112.34, TSUS. Accordingly, plaintiff's motions for summary judgment and to amend and supplement its complaint are denied, and defendant's cross-motion for summary judgment is granted.