**WARRIOR TOMBIGBEE TRANSPORTATION COMPANY, INC.,**
**Plaintiff-Appellee,**

v.

**M/V NAN FUNG etc., Defendant,**

**John K. Irish, Inc., Defendant-Appellant.**

**No. 82–7106.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1983.

Sidney Schell, Mobile, Ala., for defendant-appellant.

J.M. Druhan, D. Charles Holtz, Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

FAY, Circuit Judge:

Plaintiff, Warrior Tombigbee Transportation Co., Inc. ("Warrior"), brought this maritime action, 28 U.S.C. § 1333, against John K. Irish, Inc. ("Irish") seeking judgment on a contract claim for the transportation by Warrior of approximately 30,000 metric tons of coal from Cordova, Alabama to Mobile, Alabama. Warrior moved for partial summary judgment. The trial court issued an order with findings of fact and conclusions of law which granted Warrior's motion for partial summary judgment, awarding damages in the sum of $262,136.20 plus interest and costs to Warrior. Irish appealed the final judgment entered on the summary judgment order. We reverse the district court's grant of Warrior's motion for partial summary judgment.

## I.

At the outset, it should be noted that the facts of this case are in dispute. Irish is a coal broker which buys and sells coal both domestically and in the export market. Warrior is an Alabama corporation whose principal business is the furnishing of inland barge transportation for non-regulated commodities.

On February 20, 1981, Irish entered into a contract with the Scandinavian Trading Company to deliver approximately 30,000 metric tons of export coal on board a ship to be nominated by Scandinavian Trading Company at Mobile. According to Irish's version of the facts, on February 20 it also entered into a contract with Associated Fuels, Inc. ("Associated") whereby Associated was to deliver approximately 30,000 metric tons of coal loaded on board a vessel to be nominated on an L.S.T. basis for $45.00 per ton.[1] On or about the 20th day of February, 1981, Associated contracted with Moss

Enterprises, Inc. ("Moss") to deliver the necessary coal onboard a vessel at Mobile during the first week in March, 1981, on an L.S.T. basis for $41.75 per ton. Moss arranged with Warrior for barge transportation to Mobile and with Cooper Stevedoring Company for stevedoring services in loading the vessel at Mobile.

Thus, according to Irish's version of the facts, as of the 20th day of February, it had contracted to deliver approximately 30,000 metric tons of coal to the Scandinavian Trading Company onboard Scandinavian's vessel at Mobile during the first week in March 1981, and had contracted with Associated for the L.S.T. delivery of such coal. Associated had sub-contracted with Moss to deliver the coal on an L.S.T. basis onboard Scandinavian's vessel and Moss had arranged with Warrior to transport the cargo.

Warrior controverts Irish's description of the facts. Warrior avers that on or about February 25, 1981, the vice-presidents of Warrior and Irish reached a telephonic agreement whereby Warrior would provide certain services consisting of the transportation of approximately 33,000 net tons of coal from Cordova, Alabama, to Mobile, Alabama, for barge-to-ship loading. The terms of the oral agreement were confirmed in a letter, dated February 25, 1981, written on behalf of Warrior by its vice-president, Ron Brown (the "Letter"). The Letter also included a request that Irish indicate its assent to the terms of the contract by its vice-president, David B. Tooker signing on behalf of Irish in a space provided at the bottom of the Letter. On February 26, 1981, Tooker received the letter on behalf of Irish. After telephoning Brown, Tooker added language above his signature line which stated that Irish accepted an additional $1.70 barge rate, over and above Warrior's normal rate because of the short time frame involved, but that Warrior's freight would be paid to Moss, who in turn

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The term L.S.T. delivery means "loaded, stowed and trimmed" which indicates that the cargo was to be delivered onboard the vessel

and the coal was to be bought or provided by Associated or Moss Enterprises, Inc. ("Moss") and Associated or Moss was to pay for all delivery and loading expenses.

would tender payment to Warrior. This mode of payment was earlier accepted by Brown orally. After incorporating the change into the Letter, Tooker attached his signature in the space provided and forwarded the Letter to Brown.

Irish disputes Warrior's assertion that during their February 25 telephone conversation a contract was reached whereby Irish undertook to pay Warrior all of its freight, shifting, and demurrage charges in connection with the transportation of the subject coal to Mobile; Irish argues that during the February 25 telephone conversation it explained to Warrior that it contracted for the coal on an L.S.T. basis and that Associated was responsible for its transportation. Irish further submits that after receiving Warrior's Letter on February 26, its vice-president telephoned Warrior and again explained that the shipment was L.S.T., the responsibility for the barge transportation was that of Associated and not Irish, and that Irish had agreed to guarantee the additional $1.70 only, which it proposed to pass on to Associated; its vice-president then read to Warrior its proposed reply, wrote down his comments, and signed and sent the Letter with his comments to Warrior. Thus, according to Irish, by its officer attaching the additional language and his signature to the Letter and forwarding the Letter to Warrior, it intended to guarantee only the additional $1.70 barge rate; it did not intend for the Letter to be a contract for barge transportation.

From March 3, 1981, until March 18, 1981, the coal was transported by Warrior by barge from Cordova, Alabama to Mobile, Alabama. Warrior invoiced Moss for the barge transportation. Of the sum of $326,-255.37 that was invoiced, Moss paid only $64,119.17. When Moss did not pay the balance due, Warrior invoiced Irish for the sum of $262,136.20 based upon the full $9.50 per ton, plus shifting charges at Mobile. Claiming that all payments, including payment for transportation services, were made to Associated, Irish refused to pay the sum demanded by Warrior; hence, this lawsuit was filed by Warrior. The district court entered a summary judgment in favor

of Warrior and against Irish, from which judgment this appeal is taken.

## II.

Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1368 (11th Cir.1982); *Impossible Electronics, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1030 (5th Cir.1982). "In reviewing a decision granting or denying summary judgment, this court applies the same legal standards as those that control the district court in determining whether summary judgment is appropriate." *Clemons,* at 1368, *citing Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975).

The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Marsh,* 651 F.2d at 990–991. "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Clemons,* at 1368. "All reasonable doubts about the facts should be resolved in favor of the non-movant." *Id.,* at 1369. A trial court must not decide any factual issues it finds in the records; if factual issues are present, the court must deny the motion and proceed to trial. *Id.; Marsh,* 651 F.2d at 991; *Lighting Fixture & Electric Supply Co. v. Continental Insurance Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts. *Clemons,* at 1369; *Lighting Fixtures & Electric Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising

from undisputed facts, then the court should deny summary judgment. *Clemons,* at 1369; *Impossible Electronics Techniques, Inc.,* 669 F.2d at 1026.

■ Applying these principles to the instant case, we find that the district court erred in granting Warrior's motion for partial summary judgment. Given the ambiguities in the record, the parties' conflicting versions of the facts, and the competing factual inferences arising from the contested facts, the only thing clear is that this is an inappropriate case for summary disposition.

Before granting Warrior's partial motion for summary judgment, the district court reviewed conflicting affidavits and depositions including the affidavit and deposition of Irish, whereby it denied that it contracted with Warrior for the transportation of the subject coal. The district court also reviewed other depositions which supported Irish's contention that it purchased the coal on an L.S.T. basis from Associated and that Associated was obligated to pay for the coal. Further, Irish brought before the trial court the testimony by Moss' president that Warrior was aware of the L.S.T. arrangement. From these submissions, it is apparent that Warrior's motion for partial summary judgment was opposed by affidavits and depositions from competent parties with knowledge of the facts of this case. Upon the information before it, the trial court concluded that there existed no L.S.T. arrangement for the transportation of the subject coal between Irish and Associated, rather Irish had contracted with Warrior for the transportation of the coal. The district court stated:

> Irish contends that all payments, including payment for transportation services, have been made to Associated Fuels, Inc. (Tooker deposition, page 18.) The court finds this irrelevant to the matter at bar. There was no independent contract or agreement between Warrior and either Associated Fuels, Inc. or Moss relative to the transportation of the coal made the subject of this lawsuit. (Affidavit of Ron Brown.)

The contract negotiations between Brown and Tooker transpired over the telephone on February 25 and February 26, 1981. The terms discussed in the initial conversation were reduced to writing by Brown and sent to Tooker for confirmation. Tooker called Brown back on February 26 and negotiated the mode or manner of payment to Warrior for services. The confirmation of the agreement reached by the parties to the contract is reflected in the addition to the typed letter agreement of February 25, 1981, wherein Tooker added that '. . . it is understood that our payment for coal and transportation will be made to Moss Enterprises who in turn will pay you for barge transportation.' The letter evidencing the contract was then returned to Brown who accepted the modification by performance according to the terms of the contract. Brown maintains that he did not consider the letter to be a contract at all, yet there is no dispute as to the written terms. He negotiated the terms, added a clause to the writing evidencing the earlier negotiations and signed it. All essential elements of a contract exist. This court can reach no other reasonable conclusion but that the letter of February 25, 1981 evidences a contract.

Order on Plaintiff's Motion for Partial Summary Judgment, December 30, 1981, at 3–5.

There are two deficiencies in this ruling. First, looked at in the light most favorable to the party opposing the motion, it could be inferred that Irish's vice-president, Tooker, by attaching the additional barge rate language and his signature to the Letter, intended to guarantee the payment of the additional $1.70 only, and not, as the trial court inferred, that he intended to contract directly with Warrior for the payment of all of Warrior's freight, shifting, and demurrage charges in connection with the transportation of the subject coal to Mobile. Substantial support for this inference can

be found in the facts adduced by Irish.[2] Taken as true, these facts establish that William Walter Moss, the president of Moss Enterprises, was contacted by Bob Fleming, an independent coal broker, about a contract to supply coal to Associated Fuels. Fleming asked Moss to make arrangements for barge transportation to Mobile as a part of an L.S.T. with Associated. (R., Deposition of William Walter Moss, p. 19). Moss contracted with Warrior for barge transportation and told Warrior that Associated was the shipper and pointed out the L.S.T. terms of the contract (Moss deposition, at 21, 41).

Moss understood that he would be paid $41.75 per ton, out of which he was to pay for the coal, pay for the barge transportation, pay Cooper Stevedoring Company for loading the coal, and to pay for handling charges. Brown, the president of Warrior was aware that Warrior was to be paid out of Moss' earnings (Moss deposition at 37–39). Likewise, William V. Bru of Cooper Stevedoring Company understood that the vessel used to transport the coal was to be loaded, stowed, and trimmed by his company under a contract with Moss. (R., Deposition of William V. Bru, at 57).

The facts further establish that Tooker, during his February 25 telephone conversation with Warrior, explained that it contracted for the coal on an L.S.T. basis and that the responsibility for its transportation was that of Associated. After receiving Warrior's Letter purporting to confirm their February 25 conversation, Tooker called Warrior and explained again that the shipment was L.S.T. and the responsibility for the barge transportation was that of Associated and not Irish, and that Irish had agreed to guarantee the additional $1.70 only. Tooker read to Warrior its proposed reply, wrote down his comments, and then signed and sent the Letter with his comments to Warrior. (R., Affidavit in Opposition to Partial Summary Judgment, at 38; Deposition of David B. Tooker, at 12–13).

The above facts, when regarded as true for purposes of summary judgment, permit the inference that Tooker, by attaching the additional barge rate language and his signature to Warrior's Letter, intended to guarantee the payment of the additional $1.70 only, he did not intend to enter into a direct contract with Warrior for the transportation of the subject coal. For this reason, the district court's determination that because of the verbal and written communications between the company's officers there was no fact issue as to the intent of Irish to enter into a contract with Warrior for the transportation of the subject coal cannot stand.

▮ The second problem we have with the district court's grant of summary judgment is that the court resolved factual disputes by weighing the conflicting evidence put before it. As previously noted, Warrior's motion for partial summary judgment was opposed by affidavit and depositions from competent parties. The conflicting affidavits and deposition testimony created genuine issues of material fact. For instance, Warrior, by way of affidavit, asserted that there was a contract between the two companies; Irish, in opposition to such motion, asserted that there was no contract. The trial court resolved the conflict by concluding that there was a written contract:

**2.** As aptly noted in Section 2727 of Wright, *Federal Practice and Procedure:*

Because the burden is on the movant, the evidence presented to the court always is construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences that can be drawn from it... Facts, asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true.

. . . .

The burden on the nonmoving party is not a heavy one; he simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial. According to the Supreme Court:

It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*Id.* at 528–540 (footnotes omitted).

Brown maintains that he did not consider the letter to be a contract at all, yet there is no dispute as to the written terms. He negotiated the terms, added a clause to the writing evidencing the earlier negotiations and signed it. All essential elements of a contract exist. This court can reach no other reasonable conclusion but that the letter of February 25, 1981 evidences a contract.

*Order,* at 5. The court also held that "[t]here was no independent contract or agreement between Warrior and either Associated Fuels, Inc. or Moss relative to the transportation of the coal made the subject of this lawsuit." *Id.,* at 3. It becomes clear from these determinations that the trial court misunderstood its limited function in summary judgment proceedings when it considered Warrior's motion for partial summary judgment. It is well established that "[t]he district court's function, in a summary judgment proceeding, is not to resolve factual issues but to determine whether there exists a genuine issue of material fact. In making its determination, the court may not weigh conflicting affidavits to resolve disputed fact issues." *Farbwerke Hoeschst A.G. v. MV Don Nicky,* 589 F.2d 795, 798 (5th Cir.1979). When faced with a motion for summary judgment "it is no part of the [trial] court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried." *Tobelman v. Missouri-Kansas Pipe Line Co.,* 130 F.2d 1016, 1018 (3rd Cir.1942). "Under the rule dealing with summary judgment, no margin exists for the disposition of factual issues, and the summary judgment procedure does not serve as a substitute for a trial of the case." *Frey v. Frankel,* 361 F.2d 437, 442 (10th Cir.1966); *Impossible Electronics Technique,* 669 F.2d at 1031; *Marsh,* 651 F.2d at 991; *Cole v. Chevron Chemical Co.,* 427 F.2d 390, 393 (5th Cir.1970), cert. denied, 414 U.S. 858, 94 S.Ct. 67, 38 L.Ed.2d 109 (1973). For these reasons, the district court's factual determinations and resolution of conflicting evidence cannot stand.[3]

**3.** Summary judgment appears to be based squarely upon the district court's determination that the Letter of February 25, 1981 constituted a contract between Irish and Warrior. Irish presented an affidavit and deposition to the district court categorically stating that there was no such contract. The district court concluded that the Alabama parol evidence rule rendered all contradictory evidence inadmissible:

Defendant maintains that the writing evidencing the contract does not adequately reflect the agreement between Brown and Tooker in that Brown knew that Associated Fuels, Inc. was to receive the money instead of Moss. The court finds that inasmuch as the parole evidence rule would render contradictory evidence of a prior oral arrgreement inadmissible, this argument raises no material issue of fact.

*Order,* at 5.

By applying the parol evidence rule and refusing to allow Irish to show that the Letter of February 25 did not adequately reflect the agreement between Brown and Tooker, the district court begged the critical question whether the writing is, in fact, a true and final expression of the agreement made by the parties. As noted by the Supreme Court of Alabama:

The parol evidence rule, therefore, does not apply to every contract of which there exists written evidence, but applies only when the parties to an agreement reduce it to writing, and agree or intend that the writing shall be their complete agreement. *3 Williston, Contracts,* Section 633; *I.H.M., Inc. v. Central Bank of Montgomery.*

. . . .

Where there exists doubt that the written agreement was ever intended to reflect the full agreement of the parties, the courts of this State have not hesitated to admit contradictory parol evidence of their true agreement. See *I.H.M., Inc. v. Central Bank of Montgomery, supra; Alabama Power Company v. Pierre; supra;* and *Richard Kelley Chevrolet Co., Inc. v. Seibold, supra. See, also, Mayo v. Andress,* 373 So.2d 620 (Ala. 1979).

. . . .

The parol evidence rule does not prevent the admission of contradictory evidence to establish the truth.

. . . .

The parol evidence rule then serves to prevent parties from renegotiating their agreements once integrated in a completed writing and, also, leaves the question whether the writing is in fact a complete integration to the trial judge to determine as a matter of law. It should be noted, however, that on this issue—whether a writing is a complete and accurate integration of the agreement of the parties—there is no parol evidence rule to be applied inasmuch as a writing cannot prove itself. A written document by itself,

Because the district court erred when considering Warrior's motion for partial summary judgment by weighing conflicting evidence and resolving factual disputes, and because genuine issues of material fact exist that preclude summary judgment, we REVERSE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion.

regardless of how long and detailed it may be, cannot prove that the parties have assented to it as the complete and accurate integration of their contract. *Seibold,* supra, at 993, citing 3 A. Corbin, Contracts, Section 573 at 360. This point, in the context of the parol evidence rule, is emphasized by Wigmore:

The question whether the parties have assented to a writing as a complete and accurate integration of their contract is ultimately one of intent and must be determined from the conduct and language of the parties and the surrounding circumstances. The written document alone is insufficient. Indeed, the very testimony that the parol evidence rule is supposed to exclude is often, if not always, necessary before a court can determine that the parties have agreed upon the writing as a complete and accurate statement of their contract. The evidence that the rule seems to exclude must be heard and weighed before it can be excluded by the rule. 3A. Corbin, Contracts, Section 582 at 450 (1960). See, also, Wigmore, Evidence, Section 2430(2). The paradox, however, is only apparent. Parol evidence of the alleged negotiations lead-

ing to the written agreement is received by the trial court only on the issue of whether the offered writing was mutually assented to as a complete integration. If, despite the received testimony, the court finds that the writing was mutually assented to as a complete integration, it thereby determines that the negotiations testified to were discharged and nullified by the parties themselves. 3A. Corbin, Contracts, Section 582 at 450, note 80.

In the instant case, the district court refused to consider any evidence that would contradict the existence of a contractual arrangement between Irish and Warrior. The court never considered the question whether the parties assented to the Letter of February 25 as a complete and accurate integration of their contract; rather, the district court begged the question and assumed that since there was a writing, there was a meeting of the minds and thus a contract. The question whether the parties agreed or intended the Letter to reflect the full agreement of the parties is an issue to be appropriately resolved upon remand of this cause.