**Willie ELLISON and Mary Ellison,
Plaintiffs-Appellants,**

v.

**NORTHWEST ENGINEERING COMPANY, A Delaware Corporation,
Defendant-Appellee.**

**No. 82–5475.**

United States Court of Appeals,
Eleventh Circuit.

July 11, 1983.

Rehearing Denied Sept. 7, 1983.

Alison C. Weinger, Kurzban & Kurzban, Steven Weinger, Miami, Fla., for plaintiffs-appellants.

Edward R. Nicklaus, Dixon, Dixon, Hurst, Nicklaus & Webb, William R. Wicks, III, Miami, Fla., for defendant-appellee.

Before VANCE and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

VANCE, Circuit Judge:

On January 4, 1980, while Willie Ellison was lubricating the gears of a dragline, his feet slipped and he fell into two moving gears amputating his right forearm. Ellison was employed by Rocco Construction Company, Inc., whose president, Dennis Roland, owned the dragline.

The dragline was a Model 6, serial number 19820, manufactured by Northwest Engineering Company (Northwest) in 1957 when it was sold to Dade County, Florida. The dragline was later sold to a second owner who in turn sold it to Roland in 1979.

Ellison and his wife sued Northwest for negligent design, manufacture and failure to warn, breach of warranty and under a strict liability theory for an alleged defect in design and manufacture.

Ellison's original theories rest on the contention that the dragline was defective in that it was designed and manufactured without a helical pinion guard, a guard over the meshing gears where Ellison's arm was caught. Northwest contends that such a guard was in place when the dragline was manufactured and sold to Dade County. The existence or non-existence of the guard was the central question presented to the district court on Northwest's motion for summary judgment. The court, 533 F.Supp. 482, concluded that the guard was in place, holding that Ellison's contrary evidence was too tenuous to create a genuine issue of fact in light of the overwhelming support for Northwest's position. On the basis of such holding it entered the summary judgment for Northwest from which Ellison now appeals.

Here as in the district court the sole question we address is whether Ellison's evidence that there was no guard was sufficient to withstand Northwest's motion for summary judgment. We conclude that it

was and, therefore, reverse and remand for further proceedings.[1]

The controlling rules are well established and clear cut. In *Warrior Tombigbee Transportation Company, Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296–1297 (11th Cir. 1983), we stated them as follows:

The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.... All reasonable doubts about the facts should be resolved in favor of the non-movant." A trial court must not decide any factual issues it finds in the records; if factual issues are present, the court must deny the motion and proceed to trial. Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.

(Citations omitted.) On review this court applies the same legal standards. *Id.* at 1296; *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026 (5th Cir.1982),[2] with no presumption favoring a trial court's grant of summary judgment.

The evidence that the trial court found most pertinent consisted of affidavits by Henry Hall, a Senior Project Engineer for Northwest, who was a design engineer for the same company in 1957, and Paul Hopka, Northwest's Assistant Service Manager, who was a field service representative in

1. The Ellisons also urge that the trial court erred in entering summary judgment before ruling on their motion for leave to amend. In view of our holding it is not necessary that we reach that issue.

2. This case was decided by a panel of judges drawn from Unit B of the former fifth circuit and is binding precedent in this circuit. *Michigan Tech Fund v. Century National Bank*, 680 F.2d 736, 739 n. 2 (11th Cir.1982). *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

1957.[3] Hall's affidavit stated that in 1957 no Model 6 dragline was allowed to leave the factory without a helical pinion guard in place. Hopka delivered and installed this particular dragline when it was sold to Dade County. He stated in his affidavit that to the best of his recollection the guard was in place at that time. He further stated that its absence would have been significant and he would have noticed it. Northwest did not produce any complete blueprint or drawing of the Model 6 dragline as it was manufactured during 1957. It did produce Sheet 2480 captioned Horizontal Reverse Shaft Guards, apparently showing Model 6 guards. It contends that the sheet was applicable to the Model 6 draglines manufactured in 1957, but there is no such indication on the sheet itself.

In opposition to the motion for summary judgment Ellison relied on the affidavits and deposition of Dennis Roland, the affidavit of Dr. Jerome Catz and the depositions of John Walchuk and Eugene H. McQueen.

Mr. Roland is in the excavating business and has worked with heavy machinery for 24 years. At present he owns four draglines as well as other equipment. He does his own maintenance. When Mr. Roland acquires a machine he gets all of the literature put out by the manufacturer.

At the time Mr. Roland bought machine No. 19820 from its second owner it was in a partially assembled state. He ordered from Northwest the parts book, service manual and repair manuals—all the books and manuals applicable to that particular machine. Aside from a service manual for the diesel engine, he received only the parts book, which is the only book put out by Northwest for his machine. The parts book contains all of the parts and also shows the adjustments and lubrications. Northwest has manufactured the Model 6 over many years making minor changes from time to time but adhering to the same basic design. The parts book he received from Northwest was made up specifically for machine No.

19820. The guard in question is not in the book.

After he bought machine No. 19820, Mr. Roland ordered all parts needed to put the machine back in its condition when originally manufactured. He reassembled the machine, sandblasted and painted it.

Mr. Roland is familiar with three other Model 6 machines manufactured by Northwest during the 1950s. He says that none of them has a helical pinion guard such as is shown on sheet 2480 and that only the much newer Model 6 machines such as those built in the 1960s have such a guard.

Roland says that there was no such guard on the machine when he got it and that such a guard was never on the machine. He says specifically that there is no place on the machine to attach such a guard and that if installed the guard would not fit below the housing covering the gears. In addition sheet 2480 shows other parts which are not the same as the parts on machine 19820.

Mr. Walchak is the Office Manager of H.F. Mason Company, the manufacturer's agent that represents Northwest in Florida, and has been employed by that company for 27 years. He identified the Northwest repair parts list or book for dragline No. 19820. He stated that all original and replacement guards for that machine should be in that book. All operating instructions such as instructions concerning lubrication and adjustment for a 1957 machine are also in that book.

Mr. Eugene H. McQueen is Parts Manager at H.F. Mason Company, where he has been employed for 17 years. He also identified the parts book applicable to dragline 19820. He stated that the guard shown on Sheet 2480 is not in that parts book. The items shown on that sheet are for newer machines. He stated that, if the items were for No. 19820, they would appear in the identified parts book.

Dr. Jerome Catz is a professor of engineering at the University of Miami teaching product design and safety. In his affi-

---

**3.** Northwest offered other evidence not specifically noted by the district court. Since the question before us is the sufficiency of Ellison's evidence, we do not recite it.

davit Dr. Catz expressed the opinion that from Northwest's repair parts book a subsequent owner of the dragline could not know that a guard such as the one in question exists. He also said that the lubricating instructions in no way suggested that the lubricant should be poured through a pipe (which would be necessary with the guard in place).

We conclude that the plaintiffs' evidence was clearly sufficient to establish a dispute of fact as to whether there was or was not a guard on dragline No. 19820 when it was manufactured and sold by Northwest. In addition, we do not view Northwest's evidence as being so compelling as did the trial judge. A jury might well regard it as quite troubling that Northwest did not support its motion for summary judgment with complete plans and specifications for its Model 6 draglines manufactured in 1957 and had to rely on the recollection of its employees. It might well decline to credit those recollections, particularly inasmuch as the dragline was modified from time to time over many years. The trial judge found the explanation of the Northwest employee as to why the guard was not in the parts book to be logical. That, however, is precisely the type question committed to a jury. This is particularly true in light of Ellison's evidence that there was no place to attach the guard and that it would not fit.

We conclude that the district court erred in granting summary judgment for Northwest.

REVERSED and REMANDED.