David ABRAMS, Plaintiff,

v.

Sheriff Don HUNTER, Officer Gray, Defendants.

No. 94–163–Civ–FtM–17D.

United States District Court,
M.D. Florida,
Fort Myers Division.

Dec. 28, 1995.

2. This action is designated as a Track Two Case (Docket No. 5).

David Abrams, Immokalee, FL, pro se.

Julius F. Parker, Jr., the Parker Law Firm, P.A., Tallahassee, FL, for defendants.

## ORDER

KOVACHEVICH, District Judge.

*Pro se* prisoner Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on May 17, 1994. Plaintiff claims that:

On November 13, 1993, I was a state prisoner at Hendry Correctional Institution and was transported back to Collier County Jail for the purpose of resentencing. I was placed in general population in a cell block, that contained four video cameras, for security reasons. In spite of the security measures, I was attacked by three inmates for a period of 15 minutes and no officer showed up to break up the fight, in spite of the obvious sounds that a fight would create. Officer Gray admitted that no one paid attention to "Code Blue." the signal that would indicate that there is trouble in the cell block. 15 minutes of a beating is an extremely long time. This lapse of time resulted in personal injury, in the following location: crushed spleen and crack collar bone, and the whole side of my face was swollen from this long and continuous assault. I did not start the fight and the three prisoners that attacked me, I did not know any of them. The reason why I was attacked has not been discovered. Nor do I know whether they were ever charged. Though being treated was very slow, I nevertheless was treated. The ex-

ray will show the above mentioned injuries upon medical discovery. The defendants although, having the requirement to respond to prisoners emergency, failed to come immediately. A 15 minutes delayed can not be explained while I am under custody in a place of supposed security. The sheriff is responsible for the conditions of the jail, a state prisoner under a lawful sentence should not be placed with people that are not under conviction, especially when the county jail do not have the security measures a state prison has in the event of an assault between inmates. A non-state prisoner does not have the same discipline that a state prisoner has by virtue of the fact, that they do not have an understanding of the seriousness of institutional violation. A state prisoner has more respect for institutional rules because he knows any violation would prolong his time. A non-state prisoner will not have any regards to this fact, the best security is to separate the people in accordance to their status. The defendant do not have such policy and this led to my injuries. The medical records would reflect that I lost 50% of my blood while under emergency operation. Upon returning to the county jail I was forced to sleep on the floor, even though I had 36 staples in my stomach. The defendant is responsible for the rules that are enforced as a matter of policy. Officer Gray is part of the security which did not respond to "Code Blue" in time, while I was getting assaulted. Under the security of a place of confinement, equipped with four cameras, assaults of this kind should not take place. As a state prisoner, I have the right to safety and upon entering the county jail, this right was violated.

Plaintiff seeks:

To compel the Defendants to secure better responses to the security to other prisoners that may confront the same situation and to get punitive compensation for the injury that I sustained while under the care and custody of the Defendants. I am unable to perform my previous work that I maintained in society, and I am asking for compensation from the Defendants in their official capacity.

On February 16, 1995, the Court denied Defendants' motion to dismiss. On February 27, 1995, Defendants filed their answer. On March 13, 1995, the Court entered a scheduling order and on May 1, 1995, Defendants filed a motion for summary judgment (Doc. No. 23).

On May 24, 1995, the court instructed Plaintiff in the requirements of Rule 56, Federal Rules of Civil Procedure in responding to a motion for summary judgment. On June 14, 1995, Plaintiff responded to Defendants' motion for summary judgment (Doc. No. 26)[1]

### Defendants' Allegations

Defendants claim that "There is no evidence of personal involvement on the part of Defendant Sheriff Hunter or defendant Officer Gray, nor does it [the complaint] allege that they established any custom or policy which caused Plaintiff's injuries." They further claim that the Sheriff is not mentioned in the complaint.

They contend that the complaint alleges a cause of action based on negligence and that negligence is insufficient to state a cause of action under 42 U.S.C. § 1983.[2]

Defendants claim that Plaintiff has not established that there was any evidence of any prior incidents involving any officer of the Collier County Sheriff's Department in a similar situation, and no evidence whatsoever of any incident involving Defendants Hunter and Gray.

Defendants filed a copy of a recent case in which the United States District Court for the Southern District of Florida granted summary judgment in favor of Defendants Sheriff Richard Roth of Monroe County and one of his deputies. In that case, *Attwood v.*

---

**1.** The filing is incorrectly docketed a Plaintiff's motion for summary judgment.

**2.** Defendants cite *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and

*Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) in support of the contention.

*Roth, et al.,* Case No. 92–10061–Civ–King, the Magistrate Judge recommended that Defendants' motion for summary judgment be granted. The facts are very similar to those of the present case: Plaintiff was suddenly and without provocation attacked by three other inmates and severely injured, resulting in a ruptured spleen. The District Judge entered an order affirming the Magistrate Judge's report and recommendation and granting summary judgment to Defendants. (See Copy of case attached to Doc. No. 23).

Defendants also filed Affidavits of Sheriff Hunter and Detective Paul Rauch who took a personal statement from Plaintiff Abrams. Defendants filed a copy of the personal statement.

Defendant Hunter swore that he had no personal knowledge of the incident in which Plaintiff was attacked and that in his opinion "nobody on the correctional staff had any reason to believe that the assault would take place and it was an independent and intervening cause of Mr. Abrams' injuries." (See Affidavit of Don Hunter attached to Doc. No. 23).

Detective Rauch swore that:

From my investigation and the Plaintiff's own statement, it appears that he was attacked without provocation and without prior warning by three other inmates.

The three inmates who attacked Plaintiff were charged with aggravated battery under Florida Statutes § 784.045. (See Affidavit of Paul Rauch attached to Doc. No. 23).

### Plaintiff's Response

Plaintiff claims that the case of *Hale v. Tallapoosa County,* 50 F.3d 1579 (11th Cir. 1995) supports his position that he does not have to show that Defendants were personally involved in his assault. He claims that he has shown that the jail atmosphere "caused an excessive risk of harm." He contends that the fact that he was attacked is evidence of "how dangerous the jail setting" is under Defendant Hunter. (See Plaintiff's Response to Summary Judgment, Doc. No. 26, p. 3). He claims that no one helped him for 20 minutes and that the seriousness of his injuries prove that Defendants were deliberately indifferent. He further claims that the fact that cameras existed in the blocks is evidence that "intention of those camera, is to keep in constant observation of the inmates movement." He further contends that:

During the incident in which the Plaintiff was under attack the evidence would show that inmates were running all around the place and a crowd of inmates stood in front of the Plaintiff's cell, and at that time no official became aware that a problem existed inside the block. This type of security breach, is unsafe not only for an inmate but for an employee as well.

(See Doc. No. 26, p. 4).

Plaintiff claims that Defendants would not answer his interrogatory regarding the number of lawsuits filed by inmates who have been assaulted in the Collier County Jail during the past ten years. (See Doc. No. 26, p. 5)

Plaintiff filed a copy of his medical records, Defendants' answers to interrogatories, including a portion of the jail security plan, and a portion of the investigative report in support of his response to Defendants' motion for summary judgment.

### Standard for Summary Judgment

Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983) (quoting rule). "The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Id.* "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Id.* (quoting *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1368 (11th Cir.1982)). *See also Thrasher v. State Farm Fire & Casualty Co.,* 734 F.2d 637 (11th Cir.1984).

█ If any factual issues are present in the records, the Court must deny the motion and proceed to trial. 684 F.2d at 1369.

Moreover, summary judgment should be denied when some of the alleged incidents on which Plaintiff relies involve disputed issues of fact, while others raise legal issues that must be decided on a more developed record. *Pyles v. Carlson,* 698 F.2d 1131, 1133 (11th Cir.1983).

▬ Further, it is clear that "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." 12 C. Wright & A. Miller, *Federal Practice and Procedure,* Advisory Committee Note to the 1963 Amendments to Rule 56, Appendix at 500 (1973). And, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.*

Summary judgment may not be invoked where the record reflects conflicting versions of material facts which require credibility determinations. *See Perry v. Thompson,* 786 F.2d 1093 (11th Cir.1986); *Leslie v. Ingram,* 786 F.2d 1533 (11th Cir.1986). Because there are no genuine issues of material fact remaining in this case, Defendants' motion for summary judgment will be granted.

### Applicable Law

The eighth amendment's prohibition of "cruel and unusual punishments" requires that punishment be compatible "with 'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). Thus, it is well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates. *Gullatte v. Potts,* 654 F.2d 1007, 1012 (5th Cir.1981). *See also Harmon v. Berry,* 728 F.2d 1407, 1409 (11th Cir.1984) (per curiam); *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir.1981) (en banc). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be

reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." *Gullatte,* 654 F.2d at 1012. "'In order to state a 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982) (quoting *Wright v. El Paso County Jail,* 642 F.2d 134, 136 (5th Cir.1981), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)). *See also Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984) ("[P]rison officials may be liable where they are 'deliberately indifferent to [a prisoner's] constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.'") (quoting *Branchcomb v. Brewer,* 669 F.2d 1297, 1298 (8th Cir.1982)).

*Zatler v. Wainwright,* 802 F.2d 397, 400–01 (11th Cir.1986).

▬ Reckless disregard of Plaintiff's right to be free from attacks by another inmate may be shown by the existence of "'a pervasive risk of harm to inmates from other prisoners'" and a failure by prison officials to reasonably respond to that risk. *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980) (*quoting Woodhous v. Com. of Virginia,* 487 F.2d 889, 890 (4th Cir.1973)). The Fourth Circuit clarified the definition of a "pervasive risk" in *Withers* stating:

A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution.... It is enough that violence and sexual assaults occur ... with sufficient frequency that ... prisoners ... are put in reasonable fear for their safety and to reasonably apprise prison officials

of the existence of the problem and the need for protective measures.

*Withers v. Levine,* 615 F.2d at 161.

In *Hale v. Tallapoosa County,* a case involving an inmate beating in a county jail, the Eleventh Circuit reversed the District Court's decision granting summary judgment to Defendant Sheriff Smith. The Court held:

Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983.[3] There is no dispute that the defendants acted under color of state law. The issue is whether defendants' conduct deprived Hale of a federally protected right, to wit, his constitutional rights under the Eighth Amendment.[4]

It is well settled that "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994) (quotation & citations omitted). Thus, to survive summary judgment on his section 1983, Eighth Amendment claim, Hale was required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. *Id.; LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

Moreover, to prevail against Smith and Flurry in their individual capacities, Hale was required to show that they were personally involved in acts or omissions that resulted in the constitutional deprivation.

*See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986). To prevail against the County through Smith in his official capacity, Hale was required to prove that the deprivation resulted from "(1) an action taken or policy made by an official responsible for making final policy in that area of the [County's] business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir. 1994). Because Sheriff Smith was the County official responsible for making final policy for the jail, the County would be liable if Smith's actions or policies amounted to deliberate indifference to a substantial risk of serious harm which resulted in Hale's injury.

Sheriff Smith and Tallapoosa County

We next consider whether Hale presented sufficient evidence against Sheriff Smith and the County. Hale first was required to produce evidence that he was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer,* — U.S. at —, 114 S.Ct. at 1976; *see LaMarca,* 995 F.2d at 1535 (explaining that "unjustified constant and unreasonable exposure to violence" violates Eighth Amendment); *Zatler,* 802 F.2d at 400 (stating that inmate has constitutional right to protection from constant threat of physical assault from inmates).

Hale produced evidence that inmate-on-inmate violence occurred regularly when the jail was overcrowded, as it was during May 1990 and the two preceding years. Moreover, the evidence indicated that the violence was severe enough to require

---

**3.** Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law ... [or] suit in equity." 42 U.S.C. § 1983.

**4.** We note that Hale based his suit on the Cruel and Unusual Punishment Clause of the Eighth Amendment. Because he was a detainee and not a prisoner, however, his constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment. *Hamm v. DeKalb County,* 774 F.2d 1567, 1572 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). As did the district court, however, we may properly analyze the claim under the Eighth Amendment, as "[c]ertainly states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights," *id.* at 1573–74.

medical attention and even hospitalization on occasion. A jury viewing this evidence and all reasonable inferences therefrom in the light most favorable to Hale reasonably could find that a substantial risk of serious harm existed at the jail. Hale thus met his burden on this element.

Notwithstanding the sufficiency of Hale's evidence of a substantial risk of serious harm, he also was required to produce evidence that Smith was deliberately indifferent to that risk. More specifically, Hale was required to show both that Smith subjectively knew of the substantial risk of serious harm and that he knowingly or recklessly "disregard[ed] that risk by failing to take reasonable measures to abate it," *Farmer*, —— U.S. at ——, 114 S.Ct. at 1984; *see LaMarca*, 995 F.2d at 1535. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, —— U.S. at ——, 114 S.Ct. at 1981. Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Hale presented depositions, affidavits and other evidence supporting a finding that Smith subjectively knew that a substantial risk of serious harm existed at the jail. For example, Smith himself testified in deposition that he knew that inmate-on-inmate violence was occurring on a regular basis during May 1990 and other periods of overcrowding; Smith also testified that he knew the violence sometimes resulted in injuries requiring medical treatment. Additionally, Hale's expert attested that given the conditions existing in the months preceding May 1990, it was plainly foreseeable to a reasonable law enforcement official that a violent attack was likely to occur.

In response, Sheriff Smith emphasizes that Hale did not inform anyone that he feared an attack generally or that he feared an attack specifically from Greer and Riley. Although relevant, a claimant's "failure to give advance notice [of an attack] is not dispositive," *Farmer*, —— U.S. at ——, 114 S.Ct. at 1984. Thus, an official may not escape liability merely by showing that he did not know the claimant was likely to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault. *Id.* at ——, 114 S.Ct. at 1982. In other words, Hale was not required to show that Smith knew "precisely who would attack whom," *id.*, but only that Smith had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence. See *id.* We find the evidence sufficient to allow a jury reasonably to conclude that Hale met this standard.

Mere knowledge of a substantial risk of serious harm, however, is insufficient to show deliberate indifference. Hale also was required to produce evidence that, with knowledge of the substantial risk of serious harm, Smith knowingly or recklessly "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, —— U.S. at ——, 114 S.Ct. at 1984; *see LaMarca*, 995 F.2d at 1535. Thus, under this standard, a jury could reasonably find that Smith "fail[ed] to take reasonable measures to abate" a known risk of harm if the evidence showed that he knew of ways to reduce the harm but knowingly declined to act, or that he knew of ways to reduce the harm but recklessly declined to act.

Hale argues that he offered evidence of several reasonable measures to reduce the risk of violence that were available to Smith. These measures included classifying and segregating the inmates based on their likelihood for violence; assigning inmates to cells and bunks rather than letting them choose for themselves; adequately training jailers; and adequately supervising and monitoring the inmates. Hale also offered evidence that Smith did not pursue these measures. The evidence showed, for example, that the jail had no policy for classifying and segregating the inmates and that Hale, who was detained for failure to appear, was held with Bobo Greer, who was detained for murder and attempted murder; that inmates were not assigned to specific cells or beds; that the jail had no written training policy and that

Flurry had received no professional training at all; and that the jailer was stationed out of eyesight and earshot of the bullpen.

Smith responds that he was not deliberately indifferent primarily because he worked toward construction of a new jail which, he contends, was the only way to reduce the risk of violence. While any such efforts by Smith would appropriately be considered by a jury determining whether Smith was deliberately indifferent, such efforts would not necessarily absolve him or the County of liability. A jury could find that despite any efforts he made toward construction of the new jail, Smith was deliberately indifferent by disregarding "alternative means" or interim measures for reducing the risk of violence such as those advanced by Hale, *see LaMarca*, 995 F.2d at 1536. While consideration of alternatives available to Smith "comes perilously close to second-guessing the difficult choices that prison officials must face," *id.* at 1538, such consideration "directly addresses the question of whether monetary restraints frustrated [Smith's] good faith efforts, or whether he knowingly or recklessly disregarded solutions within his means," *id.* We conclude that Hale produced sufficient evidence to go to a jury for a determination of whether Sheriff Smith and the County were deliberately indifferent under the facts presented.

Finally, Hale was required to produce evidence of causation between Sheriff Smith's deliberate indifference and Hale's injury. More specifically, Hale was required to show two causal links: first, a link between Smith's allegedly deliberately indifferent acts and omissions and the excessive risk of violence; and second, a link between the excessive risk of violence and his injury. *id.* We have described the relationship between these two links as follows: If a plaintiff establishes a causal link between the defendant's acts or omissions and the infirm condition, the defendant is precluded from contending that the unconstitutional condition was not at least a proximate cause of . . . injuries that arose from that condition. This is not to say that a plaintiff need not show a causal link between the constitutionally infirm

condition and the alleged injuries. Rather, the finding that a prison condition offends the Eighth Amendment presupposes the distinct likelihood that the harm threatened will result. The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries, here the injuries brought about by the assaults. *Id.* (quotation & citation omitted).

Hale argues that without Smith's failure to take meaningful action as described above, the infirm condition—the excessive risk of violence—would not have existed, and he would not have been beaten. In *LaMarca*, we considered the causal relationship between a prison official's failure to improve prison safety and an excessive rate of violent, inmate-on-inmate, sexual assaults. We confirmed that "due to [their] very nature as acts of violence, the rapes that occurred are not isolated incidents of sexual conduct, but rather flow directly from these lawless prison conditions at GCI. . . . [These conditions created] the background and climate which . . . preordained homosexual rapes and other inmate assault[s]." *Id.* at 1539 (quotation omitted; ellipses & brackets in *LaMarca*). Because a "finding that a prison condition offends the Eighth Amendment presupposes the distinct likelihood that the harm threatened will result," *id.* at 1538, we further held that "[t]he evidence thus permits a finding of a causal link between the objectively intolerable conditions at GCI and the plaintiffs' injuries," *id.* at 1539.

As in *LaMarca*, Hale's evidence is sufficient to support a reasonable jury determination that the excessive risk of violence flowed from an atmosphere of deliberate indifference reflected in Smith's failure to classify or segregate violent from non-violent inmates, assign inmates to cells or beds, adequately train the jailers, and adequately supervise and monitor the inmates. As in *LaMarca*, a reasonable jury could find that the beating was caused by the excessive risk of harm which resulted from the atmosphere of deliberate indifference.

Accordingly, Hale presented sufficient proof of causation to survive summary judgment.[5]

*Hale v. Tallapoosa County,* 50 F.3d 1579, 1582–85 (11th Cir.1995).

### Discussion

#### Plaintiff's Claims against Defendant Gray

Plaintiff's only claim against Defendant Gray is that "Officer Gray is part of the security which did not respond to 'Code Blue' in time, while I was getting assaulted." Plaintiff also claims that "Officer Gray, admitted that no one paid attention to 'Code Blue,' the signal that would indicate that there is trouble in the cell block." However, this is a bald assertion that is not supported by the record. Furthermore, Plaintiff does not allege at what point in his assault a "Code Blue" was declared; in fact, he states that inmates were attempting to prevent officers from learning that there was a fight.

■ Plaintiff has not shown that Officer Gray knew about the assault at the time that it occurred. Video cameras are not provided for each cell. Camera coverage is designed in such a way as to provide a segmented view of each housing area to aid in observing the unit. (See Answers to Interrogatories, Number 1, attached to Doc. No. 26). Plaintiff does not claim that Officer Gray saw the assault on the video screen and failed to respond. (See Answers to Interrogatories, Number 14, attached to Doc. No. 26).[6]

Plaintiff has not supported any factual allegations to show that Defendant Gray violated his constitutional rights by failing to protect him from attack by other inmates. Accordingly, Defendant Gray is entitled to summary judgment.

#### Plaintiff's Claims against Defendant Hunter

■ Likewise, Plaintiff has not established any factual allegations to show that Defen-

dant Hunter violated his constitutional rights by failing to protect him from attack by fellow inmates. Unlike Hale, Plaintiff Abrams has not shown that Defendant Hunter had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence in the Collier County Jail. Although Plaintiff claims that he was forced to sleep on the floor, he does not allege that jail overcrowding resulted in violent attacks, or even that other attacks had taken place in the jail while he was there, or at any other time. Plaintiff did not file affidavits of other inmates who, if such conditions did exist, could have sworn that his beating was caused by the excessive risk of harm which resulted from an atmosphere of deliberate indifference in the jail.

■ Plaintiff's "failure to give advance notice [of an attack] is not dispositive," *Farmer,* —— U.S. at ——, 114 S.Ct. at 1984, and Defendant Hunter may not escape liability merely by showing that he did not know Plaintiff was likely to be assaulted or that an assault would be committed by the specific prisoners who eventually committed the assault. *Id.* at ——, 114 S.Ct. at 1982. However, Plaintiff Abrams must meet his burden of showing that Defendant Hunter was causally connected to Plaintiff's injury because he cannot hold Defendant liable under the theory of *respondeat superior.*

Like municipalities, supervisors cannot be held liable for the acts of employees solely on the basis of *respondeat superior. McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Supervisory liability is not limited, however, to those incidents in which the supervisor personally participates in the deprivation. *Goodson v. City of Atlanta,* 763 F.2d 1381, 1389 (11th Cir.1985); *Wilson v. Attaway,* 757 F.2d 1227, 1241 (11th

---

**5.** In finding a lack of causation, the district court apparently relied in part on a perceived lack of evidence tying the need for Hale's elbow surgery to the beating. Our review of the record indicates that Hale presented sufficient evidence for a jury to find that the beating injured his elbow and caused the need for surgery. Moreover, any inability to link the beating with the need for the

surgery would go not to liability, but rather to the amount of damages.

**6.** The Deputies who responded to the incident were Oscar Arce, Joseph Clark, Yolanda Gonzales, and Cardi Chmielewski.

Cir.1985); *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir.1976). There must be a causal connection between the actions of the supervisory official and the alleged deprivation. *Wilson,* 757 F.2d at 1241; *Henzel v. Gerstein,* 608 F.2d 654, 658 (5th Cir.1979). This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action. *Wilson,* 757 F.2d at 1241; *Sims,* 537 F.2d at 832.

*Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir.1985). Plaintiff has failed to show that a causal connection existed or that a history of widespread abuse put Sheriff Hunter on notice of the need for improved training or supervision. Therefore, Defendant Hunter is entitled to summary judgment.

Accordingly, the Court orders:

That Defendants' motion for summary judgment (Doc. No. 23) is granted. The Clerk is directed to enter judgment for Defendants and to close this case.

DONE AND ORDERED.