**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for Savannah Savings & Loan Association, Plaintiff-Appellant,**

v.

**Virginia B. HARALSON, Daniel B. Haralson, C. Whit Walter, Jr., & SouthTrust Bank of Alabama, N.A., Defendants-Appellees.**

No. 86–7203.

United States Court of Appeals, Eleventh Circuit.

March 30, 1987.

Marvin H. Campbell, Montgomery, Ala. John R. Parker, Rollins, Parker, Happell & DeWayne, Nashville, Tenn., for plaintiff-appellant.

Richard D. Greer, Najjar, Denaburg, Schoel, Meyerson, Ogle & Zaraur, Birmingham, Ala. for Haralson (Dan) & Walter & V. Haralson.

J. David Dresher, Jere F. White, Bradley, Arant, Rose & White, Birmingham, Ala., for SouthTrust.

Richard F. Ogle, Schoel, Ogle & Benton, Birmingham, Ala., for Virginia Haralson, Daniel Haralson, C. Whit Walter, Jr.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and ESCHBACH *, Senior Circuit Judge.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

JOHNSON, Circuit Judge:

Appellant, Federal Savings and Loan Insurance Corporation ("FSLIC"), appeals the grant of a motion for summary judgment in favor of Appellees, Virginia B. Haralson, Daniel B. Haralson, and C. Whit Walter, Jr. ("Haralson Appellees"), and SouthTrust Bank of Alabama, N.A. ("SouthTrust"), defendants below in this diversity action arising out of a misrepresentation contained in a financial statement. We affirm in part and reverse in part.

## I. BACKGROUND

FSLIC is the successor in interest of Savannah Savings & Loan Association, a Tennessee corporation ("Savannah"). On December 20, 1982, Savannah made an $840,000 loan to Capital Equities, Inc., which was co-signed by Virginia Haralson, the actual signature being that of her attorney and son-in-law, Appellee Walter, as her attorney in fact. The loan with Savannah was negotiated by Steve Snowden, president of Capital Equities. As a condition of making the loan, Savannah required that a person of substantial net worth approved by Savannah co-sign the note. Savannah's attorney, William Castleman, rejected the first co-signor proposed by Snowden based on his financial statement, but accepted Ms. Haralson after review of her financial statement and a discussion with her certified public accountant.

Ms. Haralson's financial statement showed $1,440,000 in cash on hand and unrestricted in banks. Notes to the financial statement stated that the financial statement was composed primarily of two trusts and that $1,400,000 of the amount listed as cash on hand and unrestricted was a trust held by Birmingham Trust National Bank ("BTNB"), predecessor of South-Trust.[1] The financial statement was prepared by Don Luna, president of LHC and Associates, which was one of the stockholders in Capital Equities, from financial information supplied by Daniel Haralson, Ms. Haralson's husband.

Savannah asked Castleman to determine if the BTNB trust was properly shown as an asset of Ms. Haralson and was unrestricted and accessible to Savannah in the event of a default. Castleman contacted Herb Rayburn, the Haralsons' certified public accountant. According to Castleman's affidavit, filed in opposition to Appellees' motions for summary judgment, Castleman concluded on the basis of his conversation with Rayburn that the trust was properly listed as Ms. Haralson's asset, that trust funds would be available to pay the indebtedness in the event of a default and that Ms. Haralson was a person of substantial net worth. Castleman then advised Savannah that Ms. Haralson would be a suitable co-signor. After a subsequent default in payment by Capital Equities and an action against Ms. Haralson to collect on the note, Savannah filed a garnishment action against SouthTrust to garnish the trust and SouthTrust responded that the trust was not subject to garnishment because it was a discretionary trust not subject to attachment by Ms. Haralson's creditors under Alabama law.[2]

Savannah filed the present action on November 6, 1984. Counts One, Two and Three of Savannah's complaint alleged, respectively, fraudulent inducement, misrepresentation, and conspiracy to defraud, and sought money damages against Mr. Haralson and Walter because of the misrepresentation in Ms. Haralson's financial state-

---

1. The financial statement provided in pertinent part:

ASSETS
Cash on Hand & Unrestricted in Banks
$1,440,000 *

. . . . . .

* Includes Trust at BTNB
The above statement is composed primarily of two Trusts of which Virginia B. Haralson is the beneficiary. The "cash" is a Trust at BTNB valued at approximately $1,400,000.00.

2. Ala.Code Ann. § 19–3–1 authorizes the creation of spendthrift trusts for the benefit of relatives of the grantor and provides that "the property so conveyed and the income or profits therefrom shall not be liable for or subject to be seized or taken in any manner for the debt of such [relative], whether the same is contracted or incurred before or after the creation of such trust."

ment regarding the unrestricted nature of the BTNB trust. Counts Four through Seven asserted various equitable theories that allegedly entitled FSLIC to reach the BTNB trust assets because of the misrepresentation: estoppel of the Haralsons to receive disbursements from the trust and to deny payment of the note from the trust assets, equitable assignment to FSLIC of the right to receive disbursements from the trust, a constructive trust on the principle and income of the trust, and entitlement to have the prohibition on payment contained in the trust instrument declared invalid with regard to Savannah. Counts Eight and Nine sought a declaration that the BTNB trust was subject to attachment because it had not been administered as a discretionary trust, but rather had been disbursed at Mr. Haralson's direction for the purpose of defrauding and hindering creditors of Ms. Haralson. Count Ten sought to set aside as fraudulent the conveyance of a security interest in the trust assets to SouthTrust in return for a $150,000 loan, which was used to release the Haralsons' home from Savannah's judgment. On March 29, 1985, FSLIC was substituted as party plaintiff.

SouthTrust and the Haralson Appellees filed motions for summary judgment and FSLIC filed a motion for partial summary judgment. FSLIC also filed a motion for leave to amend the complaint to allege facts relating to the fraud and the discovery of the fraud. On February 18, 1986, the district court granted Appellees' motions for summary judgment and denied the FSLIC's motion for partial summary judgment. With regard to the fraud claims, the district court found that Savannah had not reasonably relied on the representation as to the nature of the trust as a matter of law. With regard to FSLIC's

other claims, the district court found that there was no fraudulent conveyance as a matter of law because Ms. Haralson had no property interest in the trust out of which FSLIC could realize its claims and FSLIC had failed to show any fraudulent intent on the part of SouthTrust. The district court also found that the BTNB trust had been established validly as a spendthrift trust under Alabama law. On February 19, 1986, the district court denied FSLIC's motion for leave to amend as moot. FSLIC then filed this appeal.

## II. DISCUSSION

■■■ Initially, we find it necessary to delineate the issues before us on this appeal. Although FSLIC filed a general notice of appeal, the only issues briefed and argued by FSLIC relate to whether the district court erred in granting summary judgment on FSLIC's fraud claims based on its finding that FSLIC had failed to show Savannah's reasonable reliance on the misrepresentation in the financial statement as a matter of law. FSLIC thus has abandoned any challenge to the grant of summary judgment with regard to the counts of its complaint based on theories other than the misrepresentation in the financial statement and summary judgment with regard to those counts is therefore affirmed. Further, counsel for FSLIC stated during oral argument that FSLIC no longer asserts any claims against SouthTrust in its corporate capacity and only seeks relief against SouthTrust in its capacity as trustee of the BTNB trust. Therefore, we affirm the grant of summary judgment in favor of SouthTrust with regard to all claims asserted against it in its corporate capacity.[3]

3. SouthTrust argues that FSLIC has waived the right to contest the grant of summary judgment in its favor on any ground because FSLIC has failed to comply with Fed.R.App.P. 28(a), which requires that the appellant's brief contain, *inter alia,* a statement of the issues presented for review, an argument containing the contentions of the appellant with respect to the issues presented, and a conclusion stating the precise relief sought. Because FSLIC's brief states the issues on appeal and frames its arguments and

request for relief in terms of error in the grant of summary judgment in favor of the Haralson Appellees, SouthTrust asserts that FSLIC has abandoned any issue with regard to the grant of summary judgment in favor of SouthTrust.

Briefs are read liberally to ascertain the issues raised on appeal. *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 504 (5th Cir.1981). However, issues that clearly are not designated in the appellant's brief normally are deemed abandoned. *Rogero v. Noone,* 704 F.2d 518, 520

## A. Standard of Review

This Court reviews the grant of a motion for summary judgment pursuant to the same standards applied by the district court. *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). Summary judgment is appropriate only if, viewing the facts and inferences drawn from the facts in the light most favorable to the nonmoving party, " 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)).

## B. Reasonable Reliance

 The elements of an action for fraudulent misrepresentation under Alabama law[4] are (1) a false representation; (2) concerning a material existing fact; (3) which is relied upon by the plaintiff; and (4) damage to the plaintiff as a proximate result of the false representation. *Dickinson v. Moore*, 468 So.2d 136, 137–38 (Ala. 1985). In addition, Alabama law requires

that the plaintiff establish that his reliance was reasonable under the circumstances. *Id.* at 138. If in the exercise of reasonable care, the plaintiff would have discovered the facts or would have had reason to doubt the truth of the representation, then his reliance is not reasonable and if he has "knowledge or notice of certain facts which would excite inquiry" or the "surrounding circumstances ... would have aroused suspicion in the mind of a reasonable person", he cannot be said to have relied on the misrepresentation. *Id.* At the same time, contributory negligence is not a defense to an action for intentional misrepresentation: "[i]f the false statement is made by one who may be fairly assumed to know what he is talking about, it may be accepted as true, without question and without inquiry, although the means of correct information are easily within reach." *King v. Livingston Mfg. Co.*, 180 Ala. 118, 60 So. 143, 145 (1912). This right to rely on a statement that is assumed to be within the knowledge of the person making it, however, exists

n. 1 (11th Cir.1983); 9 Moore's Federal Practice 228.02[2.–1], at 28–7 (2d ed. 1985).

Although we certainly do not condone the unartful way in which FSLIC has stated and argued the issues on this appeal, we decline to apply the waiver rule to its claim against SouthTrust on the specific facts of this case because we find that the purposes of that rule would not be served. The waiver rule requires that the appellant state and address argument to the issues the appellant desires to have reviewed by this Court in the appellant's initial brief because "[i]n preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed." *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir.1983). On the particular facts of this case, there are no separate issues on appeal with regard to the grant of summary judgment in favor of SouthTrust. SouthTrust and FSLIC agree that, with regard to the claims based on fraudulent misrepresentation, which are the only claims presented to the Court on this appeal, SouthTrust is named as a party only in its capacity as trustee of the BTNB trust and holder of legal title to the trust assets, as any equitable relief granted against the assets of the trust on the basis of the conduct of the Haralsons would have to be directed against the trustee. Thus, the appropriateness of the grant of summary judgment in favor of SouthTrust in this limited capacity is dependent upon the appropriateness of the grant of summary judgment in favor of the Haralsons on these claims.

Further, any doubts that SouthTrust may have had regarding whether the grant of summary judgment in its favor was an issue on appeal despite the absence of argument directed specifically to SouthTrust were resolved by this Court's denial of SouthTrust's motion to dismiss, which motion was based on Appellate Rule 28(a) and the waiver rule. SouthTrust was given thirty days after denial of that motion in which to file its brief. It therefore cannot claim that it was not aware of the issues in this appeal or that it was hampered in its ability to respond.

4. FSLIC argues that the district court should have applied the substantive law of Tennessee to this action. FSLIC, however, did not raise the issue of the applicability of Tennessee law in the district court and, therefore, has waived that issue on appeal. *Reynolds v. American-Amicable Life Ins. Co.*, 591 F.2d 343, 344 (5th Cir. 1979). In the absence of pleading and proof of foreign law, Alabama courts apply Alabama law to the cases before them. *International Paper Co. v. Curry*, 243 Ala. 228, 9 So.2d 8, 18 (1942). A district court sitting in diversity is required to do the same. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) (federal court sitting in diversity must apply conflict of laws rules of state in which it sits). Therefore, although the district court's opinion does not indicate what state's law the district court was applying, we assume that the district court was applying the law of Alabama.

only "in the absence of anything to arouse suspicion." *Franklin v. Nunnelley*, 242 Ala. 87, 5 So.2d 99, 101 (1941).

▪ Whether the plaintiff reasonably relied on a misrepresentation[5] is generally a question of fact for the jury. *Mid-State Homes, Inc. v. Holt*, 52 Ala.Civ.App. 415, 293 So.2d 476, 481 (1974). The district court found in this case, however, that reliance was not reasonable as a matter of law. It concluded that the footnotes to the financial statement regarding the BTNB trust were "two red flags" because "[i]t is highly unlikely that money in trust is 'unrestricted'" and, therefore, "[a]ny reasonable person, especially any reasonable lender, who is thinking about making a loan of almost a million dollars, would have made inquiry of the trustee bank."

In this case, Savannah did make an inquiry because of the footnotes to the financial statement. The district court, however, found that this inquiry was unreasonable as a matter of law:

> Inquiry was made by Savannah's attorney of the certified public accountant who did accounting for Mr. and Mrs. Haralson, who assured the attorney that as far as he knew all the money in the trust was available to Mrs. Haralson. However, not one word in the record indicates that the accountant knew or had any reason to know what was in the trust indenture, or that he would have understood it if he had ever read it. There is, in fact, no good reason for the inquiry being directed to him rather than to the bank or to the Haralsons' attorney. No sufficient inquiry was made under the circumstances.

The district court therefore found that, as there was no reasonable reliance on the representation in the financial statement, none of the Appellees could be liable to FSLIC for fraud in connection with that representation and they were entitled to summary judgment on the fraud claims.

The FSLIC asserts that the district court's ruling that the inquiry made to the Haralsons' accountant was not a reasonable one resulted from an impermissible drawing of inferences in favor of Appellees. We agree. The district court's determination that the inquiry was not reasonable is based on its conclusion that the accountant was not a reliable source of information and that he did not have the requisite knowledge to verify the accuracy of the financial statement. Facts and the inferences to be drawn from those facts must be viewed in the light most favorable to FSLIC, the nonmoving party. *Warrior Tombigbee*, 695 F.2d at 1296. Evidence in the record of this case, if taken as true, establishes that Savannah requested Castleman to confirm that the BTNB trust was unrestricted, that Snowden, the president of Capital Equities and the person who had delivered the Haralson financial statement to Savannah, gave Castleman the telephone numbers of Ms. Haralson's attorney and her accountant, that, to the best of Castleman's recollection, if he talked to Ms. Haralson's attorney, that attorney referred him to the Haralsons' accountant, that the accountant was the person who prepared the Haralsons' tax returns, and that, based on his discussion with the accountant, Castleman concluded that the trust was properly listed as Ms. Haralson's asset and would be available in the event of a default. A reasonable inference can be drawn from these facts that Castleman was directed to the Haralsons' accountant as someone who could confirm the information on the financial statement and that it was reasonable to assume that the accountant was knowledgeable regarding Ms. Haralson's assets, including the BTNB trust. Although it certainly would have been the better business practice to have made inquiry of the trustee or to have reviewed the trust indenture itself, we cannot say on this record that inquiry of the accountant was unrea-

---

**5.** Despite the Haralson Appellees' argument that the financial statement disclosed all material facts, it is clear that there was a misrepresentation in this case. A financial statement of a proposed co-obligor on a note given to a bank for the purpose of inducing that bank to make a loan on the strength of the net worth of that co-obligor and which lists as an unrestricted asset of that co-obligor a $1,400,000 trust, when in fact that trust is a spendthrift trust, clearly does not disclose all material facts.

sonable as a matter of law. Nor can we say that reliance on the information in the financial statement regarding unrestricted assets, once confirmed as accurate by the Haralsons' certified public accountant, was unreasonable as a matter of law. This is particularly true given the intentional nature of the misrepresentation involved in this case. Cf. Dickinson, 468 So.2d at 138 (although purchaser cannot "close his eyes where ordinary diligence requires him to see," seller of land should not be allowed to induce purchase by knowingly false misrepresentations). Therefore, we find that the district court erred in granting summary judgment with regard to the fraud claims in favor of Appellees on this basis because there are genuine issues of material fact as to whether Savannah reasonably relied on the financial statement.[6]

C. Statute of Limitations

The Haralson Appellees argue that, even if the district court erred in determining that there was no reasonable reliance as a matter of law, the district court's grant of summary judgment should be upheld on the alternative ground that FSLIC's cause of action is barred by the statute of limitations. At the time this action was filed, the applicable statute of limitations was one year. Ala.Code Ann. § 6–2–39(a)(5) (repealed effective January 9, 1985). However, under Section 6–2–3, fraud actions otherwise barred were not deemed to have accrued until one year after "the discovery by the aggrieved party of the fact constituting the fraud." Ala.Code Ann. § 6–2–3 (amended effective January 9, 1985). Under Section 6–2–3, the "fact constituting the fraud" is deemed discovered when it

should have been discovered, which is "at the time of the discovery of facts which would provoke inquiry by a person of ordinary prudence and which, if followed up, would have led to the discovery of the fraud." Papastefan v. B. & L. Construction Co., 385 So.2d 966, 967 (Ala.1980).

The present action was filed November 6, 1984. The Haralson Appellees argue that the one-year statute of limitations began to run on December 20, 1982, when Savannah made the loan in reliance on the financial statement, and that the action was not saved under Section 6–2–3 because Savannah was placed on inquiry by the face of the financial statement. Alternatively, they argue that Savannah was on inquiry regarding the fraud as of August 31, 1983, when Savannah filed its action against Ms. Haralson to collect on the note, because one of the allegations in Savannah's complaint was that Ms. Haralson's "failure upon demand to pay the principal balance of the Note and accrued unpaid interest in view of [her] liquidity, as set forth in her financial statement, is fraud upon [Savannah]."

FSLIC argues that Section 6–2–39(a)(5) does not begin to run on the date of the fraudulent conduct, but on the date of the injury. It asserts that it was not injured until it had established its right as a judgment creditor to levy on Ms. Haralson's assets and unsuccessfully had sought to do so. FSLIC thus argues that the statute began to run on July 25, 1984, the date when SouthTrust answered the writ of garnishment indicating that the BTNB trust was not subject to garnishment. Alternatively, FSLIC argues that it was not put on reasonable inquiry until a copy of the trust

---

6. The district court also held that Ms. Haralson and SouthTrust were entitled to summary judgment on all claims except the fraudulent conveyance claim because FSLIC had acknowledged that it did not seek a money judgment against Ms. Haralson or damages for fraud against SouthTrust. Although FSLIC's complaint does not request monetary relief against Ms. Haralson and SouthTrust, the complaint does seek equitable relief against Ms. Haralson and SouthTrust, as trustee of the BTNB Trust, based on the misrepresentation in the financial statement. The district court does not state why the presence of these equitable claims would

not make Ms. Haralson and SouthTrust proper parties with regard to those counts of the complaint. It may be that the district court intended to find that the equitable relief sought against the Haralsons and the trust was not available as a matter of law regardless of the misrepresentation; however, a fair reading of the district court's opinion does not reveal such a finding. Therefore, we find that the district court's determination that Ms. Haralson and SouthTrust were entitled to summary judgment because of the absence of a claim for monetary relief against them was plain error.

indenture was produced by SouthTrust, on June 28, 1984, during discovery in the action to collect on the note or that, even if the financial statement placed Savannah on inquiry regarding Ms. Haralson, it could not have done so with regard to Mr. Haralson and Walter. FSLIC asserts that it could not have been put on inquiry with regard to their role in the fraud until November 7, 1983, when Ms. Haralson indicated that her husband was involved in preparation of the financial statement and Walter indicated his knowledge that the financial statement had been given to Savannah during their respective depositions.

■■■ The statute of limitations begins to run in favor of the party liable from the time the cause of action accrues, and the cause of action accrues as soon as the party in whose favor it arises is entitled to maintain an action. *Payne v. Alabama Cemetery Ass'n, Inc.*, 413 So.2d 1067, 1072 (Ala.1982). The fact the plaintiff is ignorant of the tort or injury does not toll the statute until discovery. *Id.* Nor does the fact the full amount of damages is not apparent at the time of the first legal injury prevent the cause of action from accruing:

> If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action.

*Home Ins. Co. v. Stuart-McCorkle, Inc.*, 291 Ala. 601, 285 So.2d 468, 473 (1973) (quoting *Kelley v. Shropshire*, 199 Ala. 602, 75 So. 291, 292 (1917)) (brackets in original).

■■■ Savannah suffered a legal injury by virtue of the misrepresentation in the financial statement when it was induced to make a loan to Capital Equities on the basis of that financial statement. Savannah thus could have brought an action based on the misrepresentation on the day it made the loan. Therefore, the statute of limitations began to run on December 20, 1982, and the present action was not brought within the one year limitations period.

■■■ The action would still be timely under Section 6–2–3, however, if it was brought within one year of discovery of the fraud.[7] Generally, the question of when a plaintiff discovered an alleged fraud is a question of fact for jury determination, *Osborn v. Johns*, 468 So.2d 103, 111 (Ala. 1985), and we find that to be the case on the record before us. Although the face of the financial statement provoked inquiry on the part of Savannah, as discussed above, we cannot say as a matter of law that Savannah's inquiry of the Haralsons' accountant was unreasonable and that inquiry did not lead to discovery of the fraud. Nor can we say as a matter of law that Savannah's allegations in its complaint in connection with its action to collect the debt evidence knowledge of a misrepresentation in Ms. Haralson's financial statement as a matter of law. FSLIC asserts that these allegations refer to fraud in non-payment in light of ability to pay and that Ms. Haralson's actions in defending the action on the debt, if anything, led Savannah to believe that Ms. Haralson had

7. In order to invoke the provisions of Section 6–2–3, the plaintiff must allege with specificity how and when the facts constituting the fraud were discovered and what prevented discovery of those facts within the limitations period. *Boros v. Palmer*, 472 So.2d 1020, 1023 (Ala.1985). The Haralson Appellees argue that FSLIC cannot bring its fraud claims within Section 6–2–3 because FSLIC's complaint fails to meet these requirements. However, at the time the motion for summary judgment was granted, FSLIC's motion to amend its complaint to allege facts that would bring it within Section 6–2–3 was pending before the district court. The district court denied that motion as moot following its entry of summary judgment. Because we reverse the grant of summary judgment as to FSLIC's fraud claims, that motion to amend may be renewed on remand. We therefore decline on this appeal to reach the issue of whether FSLIC has invoked the provisions of Section 6–2–3 properly.

assets sufficient to pay the debt. Further, the record shows that Savannah requested a copy of the trust indenture from Ms. Haralson on at least three occasions after Capital Equities defaulted on the loan, but Ms. Haralson failed to produce the document. On August 31, 1983, Savannah requested production of a copy of the trust indenture from Ms. Haralson in connection with discovery in FSLIC's action on the debt, which request was declined by Ms. Haralson October 12, 1983, on the ground that the document was irrelevant to the subject matter of that action. On October 5, 1983, FSLIC again requested production of the trust indenture in connection with taking Ms. Haralson's deposition, but the document was not produced during her deposition, which took place on November 7, 1983. On January 6, 1984, Savannah made a third request in which it asked that Ms. Haralson's attorneys either produce a copy of the trust indenture or give Savannah's attorney the necessary written consent to obtain a copy of that document from SouthTrust. FSLIC asserts that this request was ignored. On this record, we cannot say as a matter of law that FSLIC should have known of the fraud before November 6, 1983, a year before it filed suit. Therefore, we find that the district court's grant of summary judgment cannot be upheld on the ground that FSLIC's fraud claims were barred by the statute of limitations.

### III. CONCLUSION

The district court's grant of summary judgment in favor of Appellees is REVERSED with regard to FSLIC's claims based on the misrepresentation contained in Ms. Haralson's financial statement, except to the extent any of those claims may be asserted against SouthTrust in its corporate capacity, and AFFIRMED with regard to all other claims. This cause is REMANDED to the district court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.